IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEVAR D. BROWN** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 13-5469** |
| v. | : | |
| | : | |
| **JOHN WETZEL**, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    October 30, 2014

## MEMORANDUM OPINION

**INTRODUCTION**

      Before this Court is a motion filed by Dr. Felipe Arias, Dr. Frederick Klemick, Dr. Irwin Lewis, and Kimberly Tobin, PA-C, (collectively, "Moving Defendants") pursuant to Federal Rules of Civil Procedure (Rules) 12(b)(6) and 56, [ECF 22], which seeks the dismissal of the federal civil rights claims asserted against them in the second amended complaint filed by Levar D. Brown ("Plaintiff"), acting *pro se*. Plaintiff has opposed the motion. [ECF 23, 27, and 28]. Moving Defendants filed a reply to Plaintiff's opposition, [ECF 35],[1] and Plaintiff filed an additional response. [ECF 36]. The motion to dismiss or for summary judgment has been fully briefed and is ripe for disposition.

      For the reasons stated herein, Defendants' motion for summary judgment is granted.[2]

---

[1] The docket incorrectly relates this reply to ECF 18, when in reality it was filed in further support of the Moving Defendants' motion at ECF 22.

[2] Because this Court relies upon documents attached to the parties' pleadings and other filings, Moving Defendants' motion is construed as a motion for summary judgment and subjected to the standard of review applicable under Rule 56.

**BACKGROUND**

On December 23, 2013, Plaintiff filed a complaint against Moving Defendants which purports to assert claims for constitutional violations of his Eighth Amendment rights. [ECF 1]. Plaintiff filed an amended complaint on April 18, 2014, [ECF 12], and a second amended complaint on June 16, 2014, [ECF 20]. On June 19, 2014, Moving Defendants filed the instant motion to dismiss for failure to state a claim and/or for summary judgment. [ECF 22].

The facts relevant to the Moving Defendants' motion for summary judgment are summarized as follows:[3]

> On February 26, 2012, Plaintiff, an inmate housed in a maximum security level 5 unit at the State Correctional Institute in Graterford ("Graterford"), was assaulted with a broom by another inmate, Ronald Taylor ("Taylor"), who also threw a bucket of feces and urine into his cell. (Sec. Amend. Comp. ¶23, 35-36). As a result of the assault, Plaintiff suffered an injury to his right eye. (*Id.* at ¶38).
>
> Following the assault, Plaintiff was escorted to the medical department by two correctional officers. (*Id.* at ¶41). According to Plaintiff, he received inadequate care, was not treated by a doctor, nor was he inoculated for exposure to human feces. (*Id.* at ¶42). After the visit, Plaintiff was returned to his cell, which still had the feces thrown in the cell. (*Id.* at ¶43).
>
> Plaintiff further contends that he was scheduled to see an ophthalmologist on April 27, 2012, (*id.* at ¶45), but missed the appointment because Lt. Terra failed to have him escorted to the assessment and had to reschedule it. (*Id.*). Two weeks later, on May 11, 2012, Plaintiff was seen by an outside ophthalmologist, Dr. Jon Peet. (*Id.* at ¶49). According to Plaintiff, Dr. Peet recommended that Plaintiff undergo surgery to remove scar tissue from the affected eye. (*Id.* at ¶50).[4]
>
> Plaintiff further generally alleges that the prison medical staff, which includes Moving Defendants, denied him adequate medical care by failing to treat

---

[3] For purposes of the Moving Defendants' motion for summary judgment, this Court construes the facts and evidence in the light most favorable to the non-movant, Plaintiff. Additional alleged facts, pertinent to Plaintiff's claims against other named Defendants but not pertinent to his claims against the Moving Defendants, are set forth in this Court's memorandum opinion of October 29, 2014. [ECF 37].

[4] The factual allegation regarding Dr. Peet's recommendation for surgery is belied by medical records attached to Plaintiff's various pleadings.

2

him for exposure to human feces, failing to treat or correctly assess his injuries, failing to have him immediately treated by a specialist in the field of ophthalmology, and failing to keep his medical records. (*Id.* at ¶48).

**LEGAL STANDARD**

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A-B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 476 U.S. 574, 586 (1986). The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex,* 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

## DISCUSSION

Here, Plaintiff asserts §1983 claims against Moving Defendants for the inadequate medical care he allegedly received for his eye injury and exposure to human feces and urine. As stated, Plaintiff contends that Moving Defendants failed to provide him adequate medical care by: (1) failing to immediately treat his eye injury after an assault by a fellow inmate; (2) failing to inoculate him following exposure to human feces and urine; (3) failing to timely refer him to an ophthalmologist; (4) failing to order surgical intervention as purportedly recommended by Dr. Jon Peet; and (5) failing to keep adequate medical records. (Sec. Amend. Comp. ¶¶42, 47, 48, 51, 53, 55).

In their motion, Moving Defendants seek to dismiss the second amended complaint on the basis that Plaintiff's claims amount to mere disagreement over Moving Defendants' medical judgment and an insufficient argument for §1983 liability. Moving Defendants further contend that the medical records attached to Plaintiff's pleadings and those obtained by subpoena, which are attached to Moving Defendants' motion,[5] unequivocally refute the factual underpinnings of Plaintiff's claims against them.

---

[5] In his response to the Moving Defendants' motion for summary judgment, Plaintiff does not raise any substantive challenge to the authenticity or content of these medical records.

To maintain a cause of action under §1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Under this standard, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk." *Id.* at 844. A plaintiff may meet his pleading burden by alleging facts to establish that the defendants intentionally denied or delayed medical care. *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009).

It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In the context of an Eighth Amendment claim based on medical care, a plaintiff must allege facts demonstrating deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The holding in *Estelle* "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *U.S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979) (citation omitted). Claims of negligence or medical malpractice do not constitute deliberate indifference. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir. 2001).

As evidenced by the medical records attached to Plaintiff's complaint and to the motion for summary judgment, Plaintiff's claims against the Moving Defendants lack merit. For example, Plaintiff alleges that during his initial appointment with Dr. Peet, (an ophthalmologist against whom Plaintiff has not asserted a claim), the doctor opined that surgery on Plaintiff's right eye was necessary. This allegation, however, is belied by the medical records Plaintiff attached to his own pleadings. In these medical records, in an entry dated May 11, 2012, Dr. Peet wrote the following:

> It was discussed in length with the patient that they have a new diagnosis of POAG ["primary open angle glaucoma"] & left untreated it could lead to loss of VA ["visual acuity"] even blindness, we did discuss the importance of starting topical anti-glaucoma gtts to control the glaucoma. We are to start one eye trial to see if the gtts are working, the patient will return in several weeks to see if the gtts are working, if the[y] are they are to start the other eye. The importance of compliance was discussed in length with the patient.

(Comp., Ex. B, at pp. 25-26). While Dr. Peet recommended a course of treatment and a follow-up visit for the glaucoma found, he made no mention of the need for surgery. In addition, following Plaintiff's submission of several sick call requests demanding to know why he had been denied the ocular surgery purportedly recommended by Dr. Peet on May 11, 2012, Dr. Peet wrote to Plaintiff, in pertinent part, as follows:

> At the time of your visit with me you were 2 months out of a blunt force trauma to the right eye. After receiving treatment for your wound, your vision remained poor at hand motion only. Since I was unable to evaluate you at the time of your injury, I can only speculate as to the cause of your vision loss. Based on the appearance of your retina and optic nerve, it is my belief that you had traumatic optic neuropathy resulting in vision loss to the right eye as a result of your injury. Unfortunately, the optic nerve in the eye is similar to the brain in that once trauma occurs it is rarely able to repair itself. To this end, I regret to inform you that it is unlikely you will ever gain useable vision in your right eye. I apologize if I was not clear about this point at our visit.

> The misalignment of your right eye is due to two issues. First of all since your eye no longer has useful vision, the brain tends to ignore it and it will tend to drift outward. The other issue regarding its deviation is due to the fact that you have developed some degree of scar tissue there. This scar tissue is likely tethering the eye and limiting its full range of motion. Correction for [t]his is possible with release of scar tissue with surgery. However, we must weigh this against the fact that eye does not have useful vision. To this end, any additional surgical interventions should be considered carefully. *It is my opinion that surgical correction for this issue would be excessive unless the limitations of motion in your eye resulted in extreme amounts of pain.*
>
> In regard to your left eye, you did show evidence of open angle glaucoma. You did require treatment for this issue and to this end I prescribed eye drops. The pressure was slightly higher in your right eye and may prove to be of use in regard to comfort there. Again, I stress that it will not likely improve your vision in the long term. I would like to see you back in the near future for a follow up regarding eye pressure.
>
> I hope my explanations are satisfactory to you and reach you well. I look forward to your upcoming visit with me and we can discuss these matters further. *I will clarify that, unfortunately, your right eye has limited prospects for vision in the future. To this end, I do not want to generate any false hopes in you or misunderstandings that there are any measures that can be taken to repair the vision in your right eye. The only possibility in the future of a surgical procedure in this eye would be to improve its alignment if doing so would result in a relief of pain. Anything beyond that would be unnecessary in my opinion.*

(Comp., Ex. B. pp. 57-58) (emphasis added). Notably, in this follow-up visit, Plaintiff's treating physician once again did *not* recommend surgery as argued by Plaintiff but rather recommended an alternative course and follow-up treatment. As noted above, Dr. Peet opined that "surgical correction for this issue would be excessive . . . . The only possibility in the future of a surgical procedure in this eye would be to improve its alignment if doing so would result in a relief of pain. Anything beyond that would be unnecessary in my opinion." As such, Plaintiff's claims

7

based upon the Moving Defendants' alleged failure to recommend, permit, or arrange any necessary surgery are unfounded and without merit.[6]

Plaintiff's contention that he was not provided timely and adequate medical care for his eye injury is equally belied by his medical records. Those medical records show, and Plaintiff does not dispute, that after the assault he was immediately seen by prison medical staff. In addition, Plaintiff was seen by various medical personnel for his eye injury fifty-two (52) times between the day of his injury, February 26, 2012, and March 12, 2014.[7] During these visits, Plaintiff's ocular complaints were examined, consultations with specialists were ordered, and medications were prescribed. These numerous medical visits and the treatment rendered do not support Plaintiff's contentions that Moving Defendants were deliberately indifferent to his medical needs.

Plaintiff also asserts that Moving Defendants disregarded his serious medical needs by failing to inoculate him from communicable diseases that he potentially faced as a result of the exposure to human feces and urine. (Sec. Amend. Comp. ¶42). In light of Plaintiff's numerous visits with the medical staff primarily for treatment to his eye injury, the fact that Plaintiff was not inoculated exhibits the exercise of the medical staff's medical judgment, rather than any deliberate indifference to Plaintiff's medical needs. Although under certain circumstances Plaintiff's disagreement with the Moving Defendants' exercise of medical judgment might give rise to a claim for medical malpractice, here his disagreement is not actionable under §1983. Further, despite the passage of more than two years between the assault and the filing of

---

[6] In his second amended complaint, Plaintiff also appears to assert a claim premised on the Moving Defendants' alleged failure to advise him of Dr. Peet's recommendation for surgery. (Sec. Amend. Comp. ¶55). Because the medical records show that no such recommendation was made, this claim is without merit.

[7] These medical records also refute Plaintiff's contention that the Moving Defendants failed to keep adequate medical records. Therefore, any such claim based upon this contention is without merit.

Plaintiff's second amended complaint, Plaintiff does not allege that he has contracted any kind of communicable disease from the alleged exposure. As such, this claim amounts to Plaintiff's mere disagreement with his medical treatment, which is an insufficient basis for §1983 liability.[8]

*Plaintiff's Claims under the Americans with Disabilities Act and the Rehabilitation Act*

In the first paragraph of the second amended complaint, Plaintiff asserts that he "also seeks an injunction and damages pursuant to the Americans with Disabilities Act and Rehabilitation Act." (Sec. Amend. Comp. ¶1). Both the ADA and the Rehabilitation Act bar discrimination by certain actors based upon a plaintiff's disability. *See* 42 U.S.C. §12101, *et seq.*; 29 U.S.C. §794(a). Plaintiff's complaint, however, is silent with regard to any claims asserted under either of these statutes and as to any fact that could establish a disability or discrimination by any Moving Defendants on account of any disability. Therefore, to the extent

---

[8] Though not argued by Moving Defendants, Plaintiff' claims against Moving Defendants also fail because Plaintiff has failed to allege facts to support a finding that each of the individual Defendants was personally involved in the alleged inadequate medical care rendered. It is well-settled that "a defendant must be personally involved in the alleged actions for liability to attach under section §1983." *Bonham v. Givens*, 197 F. App'x 148, 150 (3d Cir. 2006) (citing *Rizzo v. Goode*, 423 U.S. 362, 375-77 (1976)). An individual defendant cannot be liable predicated solely on the operation of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown by allegations of personal direction or of actual knowledge and acquiescence. *Id.* Such allegations, however, must be made with appropriate particularity in the complaint and must include the particulars of the conduct, time, place and person responsible. *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005); *Rode*, 845 F.2d at 1207-08. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948.

A careful review of the allegations in the second amended complaint confirms that other than being named Defendants, there are no specific factual allegations that Moving Defendants had any personal involvement in the purported violations of Plaintiff's Eighth Amendment constitutional rights. At best, Plaintiff alleges in conclusory and threadbare fashion that Moving Defendants collectively denied him adequate medical treatment. (*See* Sec. Amend. Comp. ¶¶47, 48, 51, 53, and 55). Plaintiff does not allege any facts indicating that any of these Defendants personally participated in any alleged violations arising out of his medical care. To the contrary, Plaintiff's claims against Moving Defendants rely solely on their status as members of the "medical staff" at the prison. Based upon the above-cited case law, such allegations are insufficient to satisfy the personal involvement requirement standard of *Rode*. As such, Plaintiff's claims against Moving Defendants fail, as a matter of law.

Plaintiff asserts claims under either the ADA or the Rehabilitation Act, these claims are dismissed.

**CONCLUSION**

For the reasons stated herein, Moving Defendants' motion for summary judgment is granted and Plaintiffs' claims against these Defendants are dismissed, with prejudice. An order consistent with this memorandum opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.